# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>GENERAL WIRELESS OPERATIONS INC. dba RADIOSHACK, *et al.*,<br><br>　　　　Debtors. | Chapter 11<br><br><br>Case No. 17-10506 (BLS)<br><br>Jointly Administered |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF GENERAL WIRELESS OPERATIONS INC. DBA RADIOSHACK, *et al.* & CORTLAND CAPITAL MARKET SERVICES LLC, IN ITS CAPACITY AS AGENT FOR THE LENDERS UNDER THAT CERTAIN SECOND AMENDED AND RESTATED SECOND LIEN CREDIT AGREEMENT DATED JUNE 29, 2016,<br><br>　　　　Plaintiffs,<br>v.<br><br>SPRINT SOLUTIONS, INC.<br><br>　　　　Defendant. | Adv. Proc. No. 17-50871 (BLS)<br><br><br>Re: Docket Nos. 4, 7, & 11 |

Richard M. Beck, Esq.
Sean M. Brennecke, Esq.
Klehr Harrison Harvey Branzburg LLP
919 Market Street, Suite 1000
Wilmington, DE 19801-3062

James B. Heaton, III, Esq.
John D. Byars, Esq.
Bartlit Beck Herman Palenchar & Scott LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654

*Counsel to Plaintiffs*

Steven L. Caponi, Esq.
K&L Gates
600 N. King Street, Suite 901
Wilmington, DE 19801

Dion W. Hayes, Esq.
David I. Swan, Esq.
Sarah B. Boehm, Esq.
McGuire Woods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916

*Counsel to Defendant*

## OPINION[1]

Before the Court is the Motion filed by the Official Committee of Unsecured Creditors' (the "Committee" or the "Plaintiff") for Mandatory Abstention and Remand (the "Motion") [Adv. Docket No 4]. Sprint Solutions, Inc. ("Sprint") objects [Adv. Docket No. 7] to the Motion. For the reasons stated below, the Court will grant the Motion and remand this matter to the Delaware Superior Court.

## BACKGROUND

For nearly a century, RadioShack was an iconic American retailer with thousands of stores across the United States and other countries. Competitive pressures in the retail environment and Radioshack's overleveraged capital structure created a liquidity crisis that forced it to file for relief under Chapter 11 on February 5, 2015 ("RadioShack 1").

On February 23, 2015 RadioShack and Sprint entered into the Alliance Agreement (subject to Court approval), which proposed that Sprint would build a network of Sprint retail facilities in existing RadioShack stores, and would share revenues with General Wireless Inc. ("General Wireless"). This "store-within-a-store" arrangement was intended to expand Sprint's retail footprint by opening over 1,400 Sprint-General Wireless co-branded stores, while simultaneously providing the reorganized RadioShack with a partner that could contribute valuable synergies for the retailer on a post-bankruptcy basis. On April 1, 2015, this Court entered an Order approving the Alliance Agreement and the sale of RadioShack as a going concern to General Wireless. On October 2, 2015, this Court confirmed RadioShack 1's Chapter 11 Plan.

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7052, 9014(c).

2

Unfortunately, General Wireless and Sprint's "store-within-a-store" concept was not successful. On March 8, 2017, approximately 17 months after confirmation in RadioShack 1, General Wireless, doing business as RadioShack, commenced its second Chapter 11 case ("RadioShack 2"). Before that filing, Sprint and General Wireless negotiated an orderly wind down of the Alliance Agreement. Those efforts culminated on the eve of the petition date in RadioShack 2 with the execution on March 5, 2017 of a Mutual Settlement and Release, Operations Wind Down, and Bankruptcy Cooperation Agreement (the "Settlement Agreement"). The Settlement Agreement provided, in part, for an initial payment from Sprint to General Wireless in the amount of $12 million. That payment was made to General Wireless immediately prior to the petition date and created the necessary liquidity for RadioShack 2. The Settlement Agreement called for an additional $5 million to be paid by Sprint to General Wireless upon expiration of a post-petition investigation period.

The structure of the Settlement Agreement essentially presented the Committee with two post-petition options: having received $12 million pre-petition, the Committee could consent to the release of claims against Sprint and collect the remaining $5 million. Alternatively, the Committee could forego the $5 million and pursue a recovery from Sprint through litigation.

The Committee obtained standing to pursue estate claims on behalf of General Wireless pursuant to Paragraph 5 of this Court's Final Order authorizing use of cash collateral dated April 11, 2017 [Docket No. 437]. On June 28, 2017, the Committee timely filed a post-petition Complaint (the "Complaint") in Delaware Superior Court on behalf of the estate. The Complaint included two counts for breach of contract, and one count for misappropriation of trade secrets. In broad brush, the Committee alleges that Sprint breached the Alliance Agreement by refusing to make required investments in signage, failing to stock co-branded stores with adequate levels

of salable inventory, and understaffing the co-branded stores. The Committee further alleges that Sprint misappropriated its trade secrets by disclosing and using the trade secrets without the consent of General Wireless.

Following the filing of the Complaint, Sprint removed the action from Delaware Superior Court to the United States District Court for the District of Delaware, from which it was automatically referred to this Court. The Court is now tasked with determining whether the action should be heard in the Bankruptcy Court or in the Superior Court. The matter has been fully briefed and well argued, and it is ripe for decision.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## DISCUSSION

### A. The Parties' Positions

The Committee argues that mandatory abstention is required and that the Court must remand the case to Delaware Superior Court. Sprint responds that the Committee has not met the statutory criteria for mandatory abstention. Case law teaches that there are five requirements for mandatory abstention, and all five must be present or the motion will fail. The requirements are as follows:

> (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is 'related to' a case under title 11, but does not 'arise under' title 11 and does not 'arise in' a case under title 11; (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action 'is commenced' in a state forum of appropriate jurisdiction; and (5) the action can be 'timely adjudicated' in a state forum of appropriate jurisdiction.

4

*Stoe v. Flaherty*, 436 F.3d 209, 213 2006. Only two of these factors are meaningfully contested by Sprint.[2]

First, Sprint contends that the matters presented in the litigation implicate this Court's core jurisdiction, and so mandatory abstention is unavailable. The Committee rejects that position, arguing that the three counts articulated in the Complaint are garden-variety state law breach of contract and trade secret claims. Because they are state law claims, the Committee asserts that they are non-core and satisfy prong two for mandatory abstention.

Second, Sprint argues that the fourth prong for mandatory abstention is not met. Relying on this Court's decision in *Longview Power*, Sprint asserts that the Committee fails to satisfy the "is commenced" prong because the litigation was initiated after the petition date in RadioShack 2. *In re Longview Power, LLC*, 516 B.R. 282 (Bankr. D. Del. 2014). The Committee, however, asserts that binding Third Circuit precedent in *Stoe* provides that a post-petition lawsuit may be a predicate for mandatory abstention. The Court will address each of the arguments in turn.

B. **Analysis**

1. **The Claims of the Committee Are Non-Core and Do Not Arise In or Arise Under the Bankruptcy Code**

Bankruptcy jurisdiction is derived from 28 U.S.C. § 1334, which grants district courts original and exclusive jurisdiction of all cases under title 11. 28 U.S.C. § 1334(a). Apart from limited exceptions, district courts also have jurisdiction over matters "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157, a bankruptcy court may exercise its jurisdiction to the extent a case or proceeding is referred from

---

[2] Defendant challenges whether the action can be timely adjudicated in a state forum of appropriate jurisdiction. The Plaintiff argues that the Delaware Superior Court may timely adjudicate the matter in its Complex Commercial Litigation Division, while the Defendant argues the alternative. The Court is confident this matter could be timely adjudicated in the Superior Court and finds that the Plaintiff has met its burden with respect to this element.

the district court. 28 U.S.C. § 1334(a)-(b). In the District of Delaware, there is a standing order referring all bankruptcy cases and their attendant civil proceedings to bankruptcy judges.[3]

The question of whether a matter arises under Title 11, arises in a bankruptcy case, or is merely related to a bankruptcy case is equivalent to asking whether a proceeding is core or non-core. *Stoe*, 436 F.3d at 217. If a matter arises in or arises under a Title 11 case, it is a core proceeding and a bankruptcy court may enter a final order disposing of the matter. *Id.* If a matter is simply related to a case under Title 11, then it is non-core, and (absent consent) a bankruptcy court lacks authority to enter a final order. *Id.* This Court is obliged to consider the Complaint on a count-by-count basis. The Committee's claims for breach of contract and its claim for misappropriation of trade secrets are non-core within the meaning of 28 U.S.C. § 157(b). Here, all three counts by the Committee are state law claims with no particular bankruptcy grounding. Accordingly, the Committee's claims are non-core within the meaning of 28 U.S.C. § 157(b).

Sprint further contends that this Court should hear the suit because this Court's Sale Order simultaneously approving the Alliance Agreement in RadioShack 1 contained the following retention of jurisdiction provision:

> 59. The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer or Sprint, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Transactions. This Court retains jurisdiction to compel delivery of the Acquired Assets, to protect the Buyer, Sprint and their assets, including the Acquired Assets, against any Claims and Successor and Transferee Liability and to enter orders, as appropriate, pursuant to sections 105(a), 363 or 365 (or other applicable provisions) of

---

[3] United States District Court for the District of Delaware Amended Standing Order of Reference, In re Standing Order of Reference Re: Title 11, February 29, 2012.

>    the Bankruptcy Code necessary to transfer the Acquired Assets and the
>    Assigned Agreements to the Buyer and Sprint.

[Case No. 15-10197, Docket No. 1672 at ¶ 59]. This provision stated that the Court would retain jurisdiction over the Order, Asset Purchase Agreement, and each agreement executed in connection to the sale. This broad language undoubtedly encompasses the Alliance Agreement and any disputes arising therefrom. However, when confronted with a jurisdictional dispute between a Sale Order and statutorily-based mandatory abstention, this Court must unquestionably yield to the Congressional intent of 28 U.S.C. § 1334. At bottom, a standard retention of jurisdiction provision will not operate to convert a non-core matter into a core matter, and it does not modify the mandatory abstention analysis articulated by governing law and binding precedent.

Sprint's observation that it has filed proofs of claim in this bankruptcy relating to the Alliance Agreement likewise does not change the conclusion that these matters are non-core under 11 U.S.C. § 157. Third Circuit precedent provides that the filing of a proof of claim does not automatically result in core jurisdiction over claims against non-debtors. *In re Exide Techs.*, 544 F.3d 196, 213 (3d Cir. 2008) ("...the filing of a proof of claim may cause claims against non-debtors to be deemed 'related to' proceedings, but will not result in their being considered 'core' proceedings."). The mere fact that Sprint has filed proof of claims does not somehow morph related to proceedings into proceedings that arise in or arise under the bankruptcy code; the claims, therefore, are necessarily non-core.

In the same vein, the Court is not persuaded that Sprint's claims result in core jurisdiction under 11 U.S.C. §§ 157(b)(2)(B) and 157(b)(2)(C). Section 157(b)(2)(B) provides for core jurisdiction of the Court to determine allowance or disallowance of claims against the estate. Here, the Court is not deciding whether to allow or disallow Sprint's claim. Instead, the Court is

deciding whether a complaint filed in state court may properly be heard in bankruptcy court. Section 157(b)(2)(C) provides for core jurisdiction over counterclaims of the estate against persons filing claims against the estate. Sprint's claim is not a counterclaim within the meaning of § 157(b)(2)(C) and so does not create core jurisdiction.

### 2. An Action "Is Commenced" In a State Forum For Purposes of Mandatory Abstention Even Where The Action Was Filed Post-Petition

The parties dispute whether an action must be commenced pre-petition in order for the "is commenced" prong to be satisfied and mandatory abstention applicable. Sprint relies on this Court's ruling in *Longview*, while the Committee maintains that *Longview* is inconsistent with the Third Circuit's decision in *Stoe*.

In *Longview*, the debtor initiated an adversary proceeding against an insurance company by filing a post-petition adversary complaint. *Longview*, 516 B.R. at 286. The insurance company thereafter filed a complaint against the collateral agent in California state court to determine policy coverage. *Id.* at 288. After this Court determined that the debtor was the real party-in-interest in the state court proceeding (such that the automatic stay applied to the California action), the insurance company filed a motion requesting mandatory abstention. *Id.* at 289-90. This Court denied the request for mandatory abstention on the ground that the California litigation had not been commenced prior to the bankruptcy. *Id.* at 295. In so ruling, the Court relied on a substantial body of non-binding precedent holding that only a pre-petition suit met the "is commenced" prong. *Id.* (citing *In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 878 (Bankr. M.D.N.C. 2011) ("The clear majority of cases supports the position that the cause of action must be pending in state court prior to the bankruptcy for mandatory abstention to apply.")).

In *Stoe*, the Third Circuit considered a lawsuit commenced by a former president against the debtor for pre-petition severance payments. *Stoe*, 436 F.3d at 211. Once the bankruptcy case was commenced and the automatic stay went into effect, the president brought an action to recover the unpaid payments in Pennsylvania state court. *Id.* The action was subsequently removed to federal district court, where mandatory abstention was denied because an action's removal to federal court could not serve as the sole predicate to granting mandatory abstention. *Id.* at 213. In its review, the Third Circuit focused on whether a removed action could satisfy the "is commenced" prong for mandatory abstention. *Id.* Answering that question in the affirmative, the court ruled that a suit that was filed post-petition and then removed to federal court satisfied the "is commenced" prong. *Id.* at 216. The Third Circuit in *Stoe* did not directly address whether actions commenced post-petition satisfy this prong. *Id.* The Third Circuit, however, implicitly held that post-petition commencement is sufficient by approving mandatory abstention in a factual scenario involving a state court action filed post-petition. *Id.*

Considering those two decisions, this Court concludes that *Longview* and *Stoe* are neither distinguishable nor reconcilable. *Longview* must of course yield to *Stoe*.[4] Therefore, the Committee meets this element of mandatory abstention. The Committee has satisfied all requirements for mandatory abstention as outlined by the Third Circuit in *Stoe*. The Motion for Mandatory Abstention is granted.

---

[4] While this Court of course respects the binding nature of the decision in *Stoe*, the undersigned respectfully observes that its concern expressed in *Longview* (regarding the prospect of strategic behavior by litigants) is not addressed or considered in *Stoe* (as it does not appear to have been presented to that court), and a variety of courts and authorities have held otherwise based on precisely those concerns. *In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 878 (Bankr.M.D.N.C. 2011); *Houston Baseball Partners LLC v. Comcast Corp.*, 514 B.R. 211, 214 (Bankr.S.D.Tex. 2014); *In re Jefferson County, Ala.*, 484 B.R. 427, 445-46 (Bankr.N.D.Ala. 2012); *In re Ferretti Constr. Inc.*, 208 B.R. 396, 398 (Bankr.S.D.Tex. 1995); 1 *Collier on Bankruptcy*, ¶ 3:05[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

## **CONCLUSION**

This Court finds that the Committee has carried its burden and has demonstrated that its litigation against Sprint should proceed in the Delaware Superior Court. The Motion for Mandatory Abstention is granted. An appropriate order will issue.

By the Court:

Dated: December 1, 2017

_____
BRENDAN LINEHAN SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE